IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CRYSTAL F. *on behalf of* A.M.,  )
a minor child,       )
          )
    Plaintiff,   )  Case No. 4:19cv00011
          )
v.          )  **MEMORANDUM OPINION**
          )
ANDREW M. SAUL,    )  By: Hon. Michael F. Urbanski
Commissioner of Social Security, )  Chief United States District Judge
          )
    Defendant.  )

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge filed a report and recommendation ("R&R") on July 31, 2020, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Crystal F. ("Plaintiff" or "Crystal"), on behalf of A.M., a minor child, has filed objections to the R&R, making this matter ripe for the court's consideration.

## I. Background

In October of 2015, Crystal filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act ("the Act") in an attempt to obtain benefits for A.M. See 42 U.S.C. §§ 1381–1383f (2018). In her application, Crystal alleged that A.M. was disabled due to a combination of: Sjögren's Syndrome; lupus; juvenile arthritis; joint pain in her back, elbows, knees, and ankles; headaches; insomnia; eosinophilic esophagitis;

stomach pain and constipation; food allergies; asthma and allergic rhinitis; anxiety disorder; and a reading disorder. (See, e.g., R. 125, 230–36.) Disability Determination Services, the state agency, denied the claim initially in December 2015 and upon reconsideration in April 2016. (R. 124–49.) Crystal appealed that decision.

Plaintiff requested a hearing and, on September 14, 2017, Crystal and A.M. appeared with their attorney before Administrative Law Judge Susan Smith ("the ALJ"). (R. 44–83.) Crystal and A.M. both testified. In a written decision dated February 23, 2018, the ALJ determined that A.M. was a school-age child both at the time of her application and at the time of the ALJ's decision. (R. 15 (citing 20 C.F.R. § 416.926a(g)(2)).) The ALJ concluded A.M. had the following medically determinable impairments: "Eosinophilic Esophagitis; Asthma; Positive Autoantibodies without Diagnosis of Connective Tissue Disease; Headaches; Ankle Dysfunction; Arthralgias of the Right Leg, Right Wrist, and Right Shoulder; [and] Anxiety Disorder." (R. 15–16.) The ALJ concluded those were "severe impairments" within the meaning of the Act. See 20 C.F.R. 416.924(c). The ALJ also concluded, however, that A.M. did not have an impairment or combination of impairments that met the severity of one of the listed impairments in the applicable regulations, or that A.M. had an impairment or combination of impairments that functionally equaled the severity of one of the listed impairments. (See R. 16 (citing 20 C.F.R. § 416.924, 416.925, 416.926, 416.926a.).) In reaching this conclusion, the ALJ analyzed A.M.'s functioning in the six delineated domains of functioning required to be considered by the applicable regulations: acquiring and using information; attending and completing tasks; interacting and relating with others; moving

about and manipulating objects; caring for oneself; and health and physical well-being.[1] (R. 22–28; *see also* 20 C.F.R. 416.926a(b)(1) & (d).) The ALJ found that A.M. had less than marked limitations in five of the six domains of functioning: acquiring and using information; interacting and relating with others; moving about and manipulating objects; the ability to care for herself; and health and physical well-being. She found no limitations in attending and completing tasks. As a result, the ALJ concluded that A.M. was not disabled within the meaning of the Act. (R. 28.)

On March 7, 2019, Plaintiff filed suit in this court to challenge the final decision of the Commissioner. ECF No. 2. Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the case to the United States Magistrate Judge for consideration. On September 20, 2019, Plaintiff filed a Motion for Summary Judgment, ECF No. 14, and the Commissioner filed a Motion for Summary Judgment on November 20, ECF No. 19. On July 31, 2020, Judge Hoppe filed the R&R, recommending that the court grant the Commissioner's motion for summary judgment and affirm the decision of the Commissioner. ECF No. 25. Plaintiff filed a timely objection on August 14, ECF No. 26, and the Commissioner responded on August 27, ECF No. 27. Accordingly, this matter is now ripe for review.

## II.    Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of

---

[1] A child will be found to be disabled under the Act is she has "marked" limitations in at least two of the domains of functioning or an "extreme" limitation in at least one. 20 C.F.R. § 416.926a(d).

[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or

attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

- 5 -

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object.  Id.

## III.   Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV.     Plaintiff's Objections[3]

Plaintiff lodges a plethora of objections, almost universally rehashing arguments she made to the magistrate judge (which he addressed in a thorough report and recommendation) or asking this court to reweigh the evidence in her favor.[4] As stated above, the objection process is not—and should not be—an opportunity for a plaintiff to get a "second bite at the apple . . . ." Veney, 539 F. Supp. 2d at 846. While the majority of Crystal's objections could be disposed of on the basis of her failure to make proper objections, the court will nevertheless endeavor to address her arguments here.

Crystal first objects to what she contends is the ALJ's "implication" that Crystal was "lying" about A.M. having lupus or Sjögren's Syndrome. She argues: "The Report and Recommendation erred in concluding the ALJ did not imply Crystal . . . was lying when she testified A.M.'s physician, Dr. Cordle, had told her he felt A.M. either had lupus or Sjogren's [sic] syndrome, which are both autoimmune diseases causing A.M.'s 'soft' bones, diffuse joint pain[,] and constipation." (Obj. pg. 1.)

As an initial matter, Crystal misstates the record. She did not testify Dr. Cordle told her he "felt" A.M. had lupus of Sjögren's Syndrome; she testified Dr. Cordle told her A.M. *had* lupus and that it *was* causing A.M.'s soft bones. (R. 64 ("They told me that she has lupus, this Sjogren's [sic] syndrome is what the lupus is called. . . . He's the one that found it.").)

---

[3] Detailed facts about A.M.'s impairments and medical and procedural history can be found in the report and recommendation, ECF No. 25, and in the administrative transcript, ECF No. 9, and will not be repeated here, unless salient to the objection under consideration.

[4] Throughout her 10-page objection, Plaintiff did not cite to a single case, statute, or regulation.

Turning to the underlying argument, though, the court disagrees that the ALJ "implied" Crystal was lying. Rather, ALJ Smith simply pointed out that, although Crystal claimed A.M. had been diagnosed with lupus, there was no such diagnosis in the record. The ALJ noted that, "[a]lthough the documentary evidence is replete with mentions of Lupus and Juvenile Rheumatoid Arthritis in the claimant's past medical history and subjective allegations, there are no diagnoses for these conditions appearing in the medical records." (R. 16.) It is entirely proper for the ALJ to accurately state a claimant's medical records. In fact, the ALJ found that A.M. suffered from "[p]ositive [a]utoantibodies without [d]iagnosis of [c]onnective [t]issue [d]isease." (R. 15.) Insofar as Crystal objects to the consideration of this evidence, her objection is **OVERRULED**.

Moreover, the court is not persuaded that the ALJ implied Crystal "was lying for pecuniary gain." In any event, Crystal's objection asks this court to supplant its opinion of Crystal's credibility for the ALJ's. The court is not empowered to re-weigh the evidence or make credibility determinations. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig v. Chater, 74 F.3d 585, 589 (4th Cir. 1996)). Crystal's objection on that issue is **OVERRULED**.

Crystal next contends the ALJ rejected the opinion of A.M.'s teachers "because the school teacher, Ms. Pruitt, mistakenly attributed A.M.'s symptoms to Lupus." (Obj. pg. 2.) Again, Crystal misstates the record. The ALJ gave the opinion "limited weight" because it was not from an acceptable medical source *and* because the medical records did not contain a lupus diagnosis. (R. 21.) The ALJ also noted that Ms. Pruitt's letter "did not explain the degree of decline or academic areas affected." These were valid reasons, supported by the evidence, for

giving Ms. Pruitt's letter "limited weight," and Crystal has not pointed to any evidence in the record to show that the ALJ failed to consider allegations that A.M. suffered from "pain" and "fatigue." (See, e.g., R. 26 (noting A.M.'s "subjective reports of pain").) This objection is **OVERRULED**.

Crystal contends the ALJ failed to consider Mr. Pruitt's letter as evidence. This is plainly wrong, as the ALJ gave the letter "limited weight" (R. 21) and expressly referenced Ms. Pruitt's letter in her decision (R. 22–23). Her objection is not supportable and is therefore **OVERRULED**.

Crystal next argues that the ALJ "points to the opinions of the state agency physicians in support of the conclusion that A.M. has less than marked limitations without acknowledging that additional significant evidence was developed and entered into the record after they rendered their opinions in March of 2016." (Obj. pg. 4.) This objection is unpersuasive for two reasons. First, Crystal has not pointed to any evidence that was not considered by the ALJ. Second, the ALJ clearly *did* consider the medical evidence after March of 2016 in relation to the state agency physicians' opinions. In discussing their opinions regarding A.M.'s "ankle stiffness and arthralgias," the ALJ noted expressly noted A.M.'s "more recent history of chronic ankle dysfunction, including multiple strains, treatment with casts, and physical activity limitations regarding the findings . . . in Moving About and Manipulating Objects, Caring for Yourself, and Health and Physical Well-being." (R. 20.) This objection is **OVERRULED**.

Crystal's next objection appears to be another invitation to re-weigh conflicting evidence.[5] She argues that evidence that A.M. was jumping up and down and pretending to

---

[5] This objection is so poorly phrased that the court has trouble discerning what, exactly, Crystal's objection is:

jump rope at a doctor's appointment "cannot possibly be true" because Crystal testified at the hearing that A.M. does not like to run, jump, or play because "she is scared she will break her legs . . . ." (Obj. pg. 4.) The evidence on this point was in conflict, and the ALJ reasonably rejected Crystal's testimony in the face of contemporaneous medical records—from unbiased medical professionals—reporting A.M.'s activities. (See, e.g., R. 631.) The objection seeks impermissible re-weighing of conflicting evidence and is **OVERRULED**.

As a corollary to that argument, Crystal contends the ALJ rejected evidence of A.M.'s ankle issues because Crystal testified that A.M.'s had "broken" her leg "six" times (R. 63–64), even though A.M.'s medical records do not report any such breaks. Crystal contends the ALJ ignored evidence of ankle sprains because of Crystal's inaccurate testimony. Additionally, she contends the ALJ ignored an August 2015 x-ray that showed healing of a closed fracture of the right ankle (see R. 387–88), and that the ALJ ignored A.M.'s orthopedic physician's opinion that he suspected A.M. might have peroneal hypotonia, which would cause her right ankle pain and explain her frequent ankle injuries. (Obj. pg. 4–5.)

First, the ALJ expressly considered A.M.'s "history of chronic ankle dysfunction" (R. 20) and cited it as one reason A.M. had less than marked limitations in the areas of Moving About and Manipulating Objects (R. 26) and Health and Physical Well-being (R. 28).

---

The Report and Recommendation points to medical evidence where A.M. injured her ankle but it was not broken and because A.M. was jumping up and down pretending to jump rope and laugh at a doctor's appointment in January of 2016, [Crystal]'s statement at the ALJ hearing in September of 2017 that A.M. does not like to run, jump or play because her legs hurt and she is scared she will break her legs running and jumping cannot possibly be true.

(Obj. pg. 4.)

Second, although the ALJ did not make express reference to a single x-ray from August 2015, there is substantial evidence in the record to support the ALJ's conclusions regarding A.M.'s ankle issues. The ALJ noted several ankle injuries, as well as A.M.'s routine showing on evaluation of full range of motion and repeated lack of fractures, subluxation, or dislocation. (See, e.g., R. 20–21.) Moreover, the court is not persuaded that the ALJ did not consider the August 2015 x-ray, though it does note she did not specifically reference it in her written decision. "[A]n ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed in the Administrative Record." Blackwell v. Colvin, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2013) (quoting Parks v. Sullivan, 766 F. Supp. 627, 635 (N.D. Ill. 1991)). See also Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision."). As discussed throughout this opinion, the court is satisfied that substantial evidence supports the ALJ's conclusions regarding A.M.'s chronic ankle issues, and her failure to cite a single x-ray does not require reversal when substantial evidence otherwise supports her conclusion.

Third, the ALJ is not required to account for "suspicions" of physicians; rather, she must account for medical evidence. Here, the ALJ accounted for A.M.'s ankle weakness and frequent ankle injuries throughout her written decision (see, e.g., R. 21 ("The claimant's records show a chronic history of right ankle injuries . . . .")) and cited A.M.'s ankle issues as reasons for finding less than marked limitations in two domains of functioning (see R. 26, 28). Accordingly, this objection is **OVERRULED**.

Next, Crystal argues this court should supplant the ALJ's opinion of the medical evidence with hers. In regards to A.M.'s separation anxiety, she faults the ALJ for relying on evidence from A.M.'s healthcare providers that "describe A.M. in various positive ways" instead of rejecting that evidence outright because A.M.'s mother was in the exam room with A.M. at the time. (Obj. 5.) Again, unhappy with the ALJ's conclusion, she asks this court to reject the ALJ's interpretation of the evidence in favor of her own. Absent a legal or factual reason to do so, this court is not empowered to "substitute [its] judgment for that of the" ALJ. Craig, 76 F.3d at 589. This objection is likewise **OVERRULED**.

Crystal says: "Given the Report and Recommendation's extensive attempts to build a logical bridge between the evidence and the ALJ's findings that the ALJ did not build herself in her decision, the Report and Recommendation clearly erred in concluding the ALJ built and accurate and logical bridge between the evidence and her findings regarding the functional domains." (Obj. pg. 5–6.) The court cannot agree, and this objection is **OVERRULED**.

For her next argument, Crystal contends "[t]he ALJ's conclusion that the ALJ properly discounted A.M.'s alleged pain-related limitations is also in error." (Obj. pg. 6.) Presumably she means to argue the *Magistrate Judge's* conclusion that the ALJ properly discounted A.M.'s limitations was in error. Nevertheless, this objection is nothing but a regurgitation of the preceding objections, asking this court to supplant its opinion of evidence regarding A.M.'s ankle injuries for the ALJ's. There is substantial evidence in the record to support the ALJ's conclusion that A.M. suffered from ankle dysfunction and arthralgias of the right leg (R. 15), which account for her repeated ankle injuries. The ALJ cited this evidence throughout her

opinion, and it is adequate to support her conclusion that A.M.'s ankle issues are not as debilitating as Crystal claims they are. This objection is **OVERRULED**.

Turning back to A.M.'s separation anxiety, Crystal's next objection again repeats a prior one: the ALJ erred in considering medical evidence describing A.M. as "pleasant, cooperative, and even playful" because A.M.'s mother was in the room during those evaluations. For the reasons discussed, see Craig, 76 F.3d at 589, this objection is **OVERRULED**.

Next, Crystal argues the ALJ put "too much stock" in outdated screening forms and did not address A.M.'s functioning after pre-school and kindergarten. First, insofar as Crystal objects that the ALJ put "too much stock" in a piece of evidence, she is expressly asking the court to "reweigh" the evidence, which it is not empowered to do. See id. Second, her argument that the ALJ did not consider evidence beyond her kindergarten screening is not supported by the Record. The ALJ did consider the 2013 pre-school screening and the 2014 kindergarten screening, but she also considered and cited evidence from December 2015, when A.M. saw a psychologist after the death of her uncle. The ALJ noted that, at that appointment, A.M. "responded well to intervention, and her mental status examination reflected euthymic mood, good eye contact, appropriate grooming, and good judgment and insight." (R. 20; see also R. 611–14.) The ALJ also noted that, although the psychologist recommended a follow-up in one week, there is no evidence A.M. returned. Evidence that a claimant failed to follow medical directions is relevant evidence that a condition is not as disabling as the claimant asserts. See, e.g., Burch v. Apfel, 9 F. App'x 255, 260 (4th Cir. 2001) (noting that a claimant "frequently discontinued prescribed medication"). The ALJ also noted that A.M. "has no active counseling or psychiatric medication, and is often described as

- 13 -

pleasant and cooperative." (R. 25.) As there is substantial evidence to support the ALJ's decision, this objection is **OVERRULED** as well.

Crystal next argues the ALJ failed to recognize A.M.'s history of frequent headaches because, during an ER visit in 2016 for a headache, the headache had subsided by the time a medical professional evaluated A.M. She also argues the ALJ "ignored the other evidence of record documenting A.M.'s migraines and chronic pain." (Obj. pg. 7–8.) Again, Crystal misrepresents the Record, arguing the ALJ "ignored" evidence that she not only considered, but expressly referenced in her opinion. For example, Crystal says the ALJ "ignored" Exhibits B1F, B11F, B22F, and B23F,[6] but the ALJ specifically cited those exhibits in her discussion of A.M.'s headaches. (R. 18–19, 26.)

More to the point, though, nothing suggests the ALJ did not consider any other evidence; as stated above, she is not required to mention every piece of evidence in her decision. See Reid, 769 F.3d at 865. Regarding A.M.'s headaches and attendant pain, however, there is substantial evidence to support the ALJ's determination. The ALJ correctly noted that, despite Crystal's reporting that A.M. suffered from frequent headaches, clinical evidence did not support the allegations of severity and frequency. In January 2016, A.M. was seen at the emergency room for a headache, but her physical exam was normal and A.M. showed no signs of pain.[7] Crystal insisted that she undergo a CT, which the physician advised against.[8] (R. 631.)

---

[6] Crystal cites R. 356 & 358, which is Ex. B1F; R. 628, which is B11F; R. 821, which is B22F; and R. 834, which is B23F.

[7] Crystal contends this is because the pain had subsided by then.

[8] "Mom states she is not leaving the ER until we find out why pt has had a headache x 1 yr. . . . Currently there is no reason to do a CT Head and we discussed the risks of doing a CT head such as radiation to the brain causing a future malignancy. Mom expressed understanding and agreed to sign a waiver to have the CT done.

That CT was normal. An MRI performed in August of 2016—again at Crystal's request—was also normal. (R. 812, 821.) In January 2017, A.M. reported no headaches and, as the ALJ recounted, "[c]linical records thereafter reflect that the claimant did not report headaches." (R. 26.) All of this evidence was cited by the ALJ, Crystal does not dispute the accuracy of any of those records, and they represent substantial evidence for the ALJ's decision. Crystal's objection is **OVERRULED**.

The remainder of Crystal's objections summarize the objections she made previously and, although she couches them as a separate objection, do not raise any new arguments. Insofar as they require review, for all the reasons stated above, Crystal's objection is **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: February 24, 2021

Michael F. Urbanski
Chief U.S. District
Judge
2021.02.24 16:21:21
-05'00'

Michael F. Urbanski
Chief United States District Judge

---

Mom demands a CT be done in ED today. Pt states that she plans on suing the hospital if we do not do a CT now." (R. 631.)